IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SKYRIVER TECHNOLOGY SOLUTIONS, LLC, et al., | : : | |
| | : | Case No. 2:10-cv-1017 |
| Plaintiffs, | : | |
| | : | Judge Watson |
| vs. | : | |
| | : | Magistrate Judge Kemp |
| OCLC ONLINE COMPUTER LIBRARY CENTER, INC., | : : | |
| | : | |
| Defendant. | : | |

### DEFENDANT OCLC ONLINE COMPUTER LIBRARY CENTER, INC.'S MOTION TO DISMISS

Defendant OCLC Online Computer Library Center, Inc. ("OCLC") hereby moves

pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint of SkyRiver Technologies LLC

and Innovative Interfaces Inc. (collectively "Plaintiffs") in its entirety. A memorandum in

support of this motion is attached hereto.

Respectfully Submitted,

/s/ James A. Wilson
James A. Wilson (0030704)
Trial Attorney
**Vorys, Sater, Seymour and Pease LLP**
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
T: (614) 464-5606 F: (614) 719-5039
E-mail: jawilson@vorys.com

*Counsel for Defendant OCLC Online Computer Library Center, Inc.*

Of counsel

Douglas R. Matthews (0039431)
Martha C. Brewer (0083788)
**Vorys, Sater, Seymour and Pease LLP**
52 East Gay Street, P.O. Box 1008
Columbus, Ohio  43216-1008
Telephone:      (614) 464-6400
Facsimile:      (614) 464-6350
E-mail:          drmatthews@vorys.com
                 mcbrewer@vorys.com

## **TABLE OF CONTENTS**

**PAGE**

MEMORANDUM IN SUPPORT ............................................................................................ 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.     PLAINTIFFS' ALLEGATIONS ...................................................................... 2

        A.      The Parties ......................................................................................... 2

        B.      Plaintiffs' Claims .............................................................................. 4

                1.      Relevant Markets ................................................................. 4

                2.      The Purported Anticompetitive Conduct ............................. 6

                        a.      "Anticompetitive" Actions in OCLC's Records Use Policy. ..........6

                        b.      "Anticompetitive" Actions in Cataloging Services .........................8

                        c.      "Anticompetitive" Actions in ILL Service .....................................9

                        d.      "Anticompetitive" Actions in OCLC's Entry into ILS Services ..........................................................9

                        e.      "Anticompetitive" Acquisitions by OCL .....................................10

                        f.      OCLC's Non-Profit Status as "Anticompetitive" ..........................10

        C.      The Purported Harm to Competition and Consumers............................ 10

III.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY ............................ 11

        A.      To Avoid Dismissal, Plaintiffs Needed to Plead Facts Making a Claim Plausible, Not Merely Legal Conclusions ............................................. 11

        B.      The Complaint Fails to Plead Facts Plausibly Showing that Plaintiffs Suffered Antitrust Injury or Have Antitrust Standing............................ 12

                1.      The Complaint Fails to Plead Facts Plausibly Showing that Plaintiffs Suffered Antitrust Injury ........................................ 12

                2.      Plaintiffs Lack Standing under the Antitrust Laws................... 16

        C.      Each of Plaintiffs' Substantive Claims Fails as a Matter of Law ......................... 17

                1.      Plaintiffs' Monopolization Claim Fails as a Matter of Law .................... 17

a. "Forcing" Libraries to Purchase OCLC's Cataloging Services ........................................................................19

b. OCLC's Pricing .........................................................................19

c. "Exclusive" Dealing...................................................................20

d. "Forcing" Libraries to Assist in the Development of New Products......................................................................................21

e. OCLC Acquisitions....................................................................21

f. Denying SkyRiver Access to the WorldCat Database.................22

2. Plaintiffs' Claim of Attempted Monopolization Fails as a Matter of Law ................................................................................................ 23

a. Plaintiffs Have Failed to Plausibly Allege Attempted Monopolization of the ILS Market .................................................24

b. Plaintiffs Fail to Plausibly Allege Attempted Monopolization of Any Other Market. ...........................................26

3. Plaintiffs' Claim of Unlawful Exclusionary Agreements Fails ............... 26

4. Plaintiffs' Claim of Illegal Tying Fails as a Matter of Law..................... 28

5. Plaintiffs' Claims under California Business & Professional Code § 16720 and 16726 Fail as a Matter of Law ................................................ 29

6. Plaintiffs' claim under California Business & Professional Code § 17200 Fails as a Matter of Law................................................................ 29

IV. CONCLUSION....................................................................................................... 30

CERTIFICATE OF SERVICE ......................................................................................... 32

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051 (9th Cir. 1999) ........................................... 16

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999) ...................................................................... 18

*Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201 (2010) ......................................................... 18

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413 (6th Cir. 1990) ...................... 25

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ................................................................ 11, 12

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) ................................. 22

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ........................................................................................... 16

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ........................................... 16

*Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989) ........................................... 16

*Ball Mem'l Hosp. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325 (7th Cir. 1986) ................................ 1

*Barton & Pittinos v. Smithkline Beecham Corp.*, 118 F.3d 178 (3d Cir. 1997) ........................... 14

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ................................... 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... passim

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ................................... 21

*Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007) ................................. 12

*Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962) ............................................................. 13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) .............................. 12, 13, 16

*Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104 (1986) ................................................. 15, 16

*Caruana v. Gen. Motors Corp.*, 204 F. App'x 511 (6th Cir. 2006) .......................................... 16

*Cascade Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008) ................................. 19

*CBC Cos., Inc. v. Equifax,* 561 F.3d 569 (6th Cir. 2009) ...................................... 13, 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................... 30

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001) ............................................. 30

*Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188 (10th Cir. 2009) ....................... 22

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) .................................................... 30

*Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475 (D. Md. 2008) ................... 23

*Dimidowich v. Bell & Howell*, 803 F.2d 1473 (9th Cir. 1986) ..................................... 29

*Doe v. Abbott Labs.*, 571 F.3d 930 (9th Cir. 2009) .................................................... 19

*Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992) ............................... 18

*Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010) ............................................ 21

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ..................................... 20

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994) .......................................................... 17

*HyPoint Tech., Inc. v. Hewlett-Packard Co.*, 949 F.2d 874 (6th Cir. 1991) ............................ 12

*In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 743 (D. Md. 2003) ................................. 23

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972 (6th Cir. 2000) ................. 16

*Interface Group v. Mass. Port Auth.*, 816 F.2d 9 (1st Cir. 1987) .................................. 13

*Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1357-58 (Fed. Cir. 1999), *aff'd*, 253
F.3d 695 (Fed. Cir 2001) ............................................................. 23, 27

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 485 F.3d 880 (6th Cir. 2007) ................................. 13

*J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82 (6th Cir. 2007) ............................ 7

*Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033 (9th Cir. 2003) ................................ 30

*Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 U.S. Dist. LEXIS 106049
(N.D. Cal. Sept. 27, 2010) ...................................................... 22

*Marts v. Xerox, Inc.*, 77 F.3d 1109 (8th Cir. 1996) ...................................................... 28

*Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726 (6th
Cir. 2008) ............................................................... 11, 24, 28

*Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) .......................................... 27

*N.W.S. Mich., Inc. v. Gen. Wine & Liquor Co., Inc.*, 58 F. App'x 127 (6th Cir. 2003) .............. 16

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) ......................................................... passim

*Novell, Inc. v. Microsoft Corp.*, 699 F. Supp. 2d 730 (D. Md. 2010) ........................................... 23

*Pac. Bell Tel. Co. v. Linkline Comm'ncs, Inc.*, 129 S.Ct. 1109 (2009) ................................. passim

*Pittman v. Barclays Capital Real Estate, Inc.*, No. 09 CV 0241 JM (AJB), 2009 U.S. Dist. LEXIS 34885 (S.D. Cal. April 24, 2009) ......................................................... 30

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ............................................................... 30

*Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818 (6th Cir. 1982) ...................... 25

*SAS of P.R., Inc. v. P.R. Tel. Co.*, 48 F.3d 39 (1st Cir. 1995) ...................................................... 17

*Smith v. N. Mich. Hosps.*, 703 F.2d 942 (6th Cir. 1983) ............................................................. 27

*Smith Wholesale Co. v. Philip Morris USA, Inc.*, 219 F. App'x 398 (6th Cir. 2007) .................. 24

*Spectrum Sports v. McQuillan*, 506 U.S. 447 (1993) .................................................................. 24

*State ex rel. Van de Camp v. Texaco Inc.*, 762 P.2d 385 (Cal. 1988) .......................................... 29

*Suburban Mobile Homes v. AMFAC Cmtys, Inc.*, 101 Cal. App. 3d 532 (Cal. Ct. App. 1980) ...................................................................................................................................... 29

*Tarrant Serv. Agency v. Am. Standard*, 12 F.3d 609 (6th Cir. 1993) .................................... 24, 26

*Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................ 7

*Total Benefits Planning Agency, Inc v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008) .............................................................................................. 25, 27

*U.S. v. Brown Univ.*, 5 F.3d 658 (1st Cir. 1993) ......................................................................... 15

*U.S. v. Colgate & Co.*, 250 U.S. 300 (1919) ............................................................................... 27

*U.S. v. Grinnell Corp.*, 384 U.S. 563 (1966) ......................................................................... 14, 18

*U.S. v. Microsoft Corp.*, 147 F.3d 935 (D.C. Cir. 1998) ............................................................. 21

*U.S. v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ............................................................... 21

*Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1997) .................................................................................................. 17

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, L.L.P.*, 540 U.S. 398 (2004) ........................................................................................................ 20, 22

*Virtual Maint., Inc. v. Prime Computer, Inc.*, 957 F.2d 1318 (6th Cir. 1992) ............................. 28

*Worldwide Basketball & Sport Tours, Inc. v. NCAA,* 388 F.3d 955 (6th Cir. 2004) .................... 24

## <u>STATUTES</u>

Clayton Act, 15 U.S.C. § 12 ........................................................................................... 30

Sherman Act, 15 U.S.C. § 1 ...................................................................................... passim

Sherman Act, 15 U.S.C. § 2 ...................................................................................... 4, 18

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(6) .......................................................................................... passim

Fed. R. Evid. 201(b) ..................................................................................................... 8

## <u>OTHER AUTHORITIES</u>

California Business & Professional Code § 16700 ......................................................... 31

California Business & Professional Code § 16720 ...................................................... 4, 29

California Business & Professional Code § 16726 ...................................................... 4, 29

California Business & Professional Code § 17200 ...................................................... 2, 30

IIA Phillip Areeda & Herbert Hovenkamp et. al., ANTITRUST LAW ¶ 350a. (2007) ................... 18

IIIB Phillip Areeda & Herbert Hovenkamp, ANTITRUST LAW ¶ 772 (3d ed. 2008) .................... 23

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

This case arises because Plaintiffs believe they are entitled to free access to OCLC's proprietary WordCat service, a comprehensive database of library records, developed over the past forty years.  While framed as an antitrust case, Plaintiffs' Complaint alleges only that OCLC has engaged in the types of appropriate behaviors expected of competitors:  compete vigorously on price (or, at worst, price a product too high), work with libraries to develop new products, introduce innovative new products that threaten Plaintiffs' profitability, and sell less expensive subscriptions than à la carte services.  In short, even taking the Complaint's allegations as true, the antitrust laws encourage OCLC's behavior:  vigorous competition against a company offering less expensive, but inferior products, is perfectly lawful.  It is axiomatic that "[t]he antitrust laws are for the benefit of competition, not competitors." *Ball Mem'l Hosp. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1338 (7th Cir. 1986).  Under these laws, OCLC is not obligated to give away its investment, to subsidize Plaintiffs' prices by lowering its own, or to refrain from seeking to keep its subscriber libraries.  Because Plaintiffs fail to plausibly plead that OCLC has done anything other than appropriately behave as any competitor would, and thus Plaintiffs have not suffered any antitrust injury and lack antitrust standing, the threshold requirements to proceed with an antitrust case have not been met, and this Court should dismiss the Complaint.

Further, under the dictates of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), each of Plaintiffs' individual claims fails because Plaintiffs have pled facts contradicting the purported claim and also failed to plead facts plausibly supporting the essential elements of that claim.  Thus, Plaintiffs' first claim, for monopolization, fails.  Although Plaintiffs have thrown a plethora of allegations of OCLC's purportedly anticompetitive actions into the Complaint to see

if any stick, ultimately all Plaintiffs plead is that OCLC has used the assets it lawfully possesses – most notably WorldCat – to compete fairly.

Likewise, Plaintiffs' second claim, for attempted monopolization, fails because the Complaint does not allege any of the elements of attempted monopolization: (1) anticompetitive or predatory conduct, (2) a specific intent to act in an anticompetitive manner, and (3) a dangerous probability of success.

Plaintiffs' third claim, for unlawful exclusionary agreements, fails because the Complaint does not allege anything more than the existence of agreements similar to those that have routinely been upheld under Section 1 of the Sherman Act as legitimate vertical agreements.

Plaintiffs' fourth claim, for alleged tying, fails because the Complaint does not allege the most rudimentary elements of a tying claim under the Sherman Act: the actual coercion of a purchaser to buy a second product from the seller that it would otherwise not purchase or purchase elsewhere. All the Complaint alleges is that the second product was not purchased.

Plaintiffs' fifth claim, under California antitrust law, fails because the California antitrust laws do not permit a cause of action for OCLC's purely unilateral actions, and because California law follows federal antitrust precedent with respect to the rest of claims pled.

Finally, Plaintiffs' sixth claim fails because Section 17200 of the California Business & Professional Code requires as a predicate a valid antitrust claim or an "unfair" act, which Plaintiffs have not pled. For each of these reasons, the Complaint should be dismissed.

## II.    PLAINTIFFS' ALLEGATIONS

### A.    The Parties.

Innovative Interfaces, Inc. ("Innovative"), a California for-profit company, is a provider of integrated library systems ("ILS") software and, in particular, two ILS products called

Millennium and INN-Reach.  Innovative views itself as a competitor to OCLC's recently developed WebScale Management Services ("WMS").

SkyRiver Solutions LLC ("SkyRiver"), a California for-profit company, was founded in Autumn 2009 by Innovative's owner and co-founder, Jerry Kline.  It offers a bibliographic database for cataloging, primarily populated with information obtained from the Library of Congress, CONSER, the British Library, and SkyRiver's limited list of customer libraries. SkyRiver views itself as a competitor of OCLC as a seller of cataloging services.

OCLC is an Ohio-based non-profit corporation that was founded in 1967 as the Ohio College Library Center.  (Compl. ¶ 9.)  It was founded with the goal of increasing availability of library resources and reducing the rate of increase of library costs.  OCLC also pioneered the move away from paper card catalogs to an online-based system through its WorldCat catalog, which has become the world's most comprehensive bibliographic database.  OCLC's efficiencies, and accordingly its ability to deliver cost effective services, arise from its provision and maintenance of WorldCat.  Because of the richness of its records, WorldCat allows subscribers to catalog efficiently by using to existing records.

Three years ago, OCLC introduced WorldCat Local, a service that operates with existing ILS's, including Innovative's Millennium and INN-Reach products, to allow libraries and their users to conduct searches in order to discover existing bibliographic materials in their collections.  OCLC, through WorldCat, also supports a worldwide interlibrary lending ("ILL") service accessible to its members, which allows members to share their collections with other member libraries and to know which other libraries have a holding a customer wants.  OCLC recently announced the development of an innovative new Web-scale library management service ("WMS"), which has yet to be named and which is currently being made available to a

- 3 -

limited number of early-adopter libraries. This new Web-based service will enable member libraries to more efficiently and expediently manage their administrative functions including metadata management, resource sharing, discovery services, acquisitions, and circulation. OCLC believes this will address the current needs of libraries better than traditional ILS's.

**B.  Plaintiffs' Claims.**

Plaintiffs allege six claims against OCLC. Plaintiffs' first claim alleges a violation of Section 2 of the Sherman Act. (Compl. ¶¶ 79-87.) Plaintiffs' second claim alleges a violation of Section 2 of the Sherman Act for "Attempted Monopolization" and is substantially similar to its first claim. (*Id.* ¶¶ 88-95.) Plaintiffs' third claim alleges a violation of Section 1 of the Sherman Act for "Unlawful Exclusionary Agreements." (*Id.* ¶¶ 96-101.) Plaintiffs' fourth claim alleges a violation of Section 1 of the Sherman Act for "Unlawful Tying Arrangements." (*Id.* ¶¶ 102-13.) Plaintiffs' fifth claim alleges a violation of California Business & Professional Code Section 16720 and Section 16726 (the "Cartwright Act") for "Unlawful Restraints of Trade and Unlawful Tying Arrangements," which is essentially a reiteration of claims three and four. (*Id.* ¶¶ 114-27.) Plaintiffs' sixth claim alleges a violation of the California law for "Unfair Competition," which essentially reiterates claims one through five. (*Id.* ¶¶ 128-32.)

**1.  Relevant Markets.**

As discussed below, a fundamental requirement to an antitrust claim is defining a relevant market. In listing the markets in which OCLC purportedly holds a monopoly, Plaintiffs exclude even themselves as competitors of OCLC in two of the three markets they define.[1]

---

[1] OCLC recognizes that solely for purposes of this Motion, these claims must be accepted as true, except as contradicted by the pleadings or by the documents referenced in the Complaint and attached to pleadings. Nevertheless, what is sauce for the goose is sauce for the gander – having pled a fiction that undercuts the existence of any claims they can pursue, Plaintiffs cannot claim to have been injured by actions in a market in which it has pled it does not compete.

Specifically, Plaintiffs allege that three relevant markets exist in this case. Plaintiffs do not claim they participate in the first two markets: the markets for bibliographic services and interlibrary lending services for academic libraries. (Compl. ¶¶ 16, 20-21.) The third market, the market for cataloging services, is one in which only Plaintiff SkyRiver, but not Innovative, claims to participate. (Compl. ¶¶ 17, 20-25.) While Plaintiffs claim that bibliographical services are a market, they never define this market. While they seem to imply that bibliographical records are sold, they do not describe in any way how these records are packaged for sale or who the customers for the purchase of such records are. In any event, neither Plaintiff claims (a) to be a competing seller of bibliographical records; (b) to be a purchaser of bibliographic records from OCLC; or (c) to have ever attempted to purchase bibliographic records from OCLC. Contradicting the claim that this database is a separate antitrust product market, much of the Complaint treats WorldCat as an asset that gives OCLC a competitive advantage in the markets in which OCLC is actually selling products. (*See, e.g.*, *id*. ¶¶ 34-35.)

The second market claimed by Plaintiffs is the interlibrary lending market. (*Id*. ¶ 20.) Neither Plaintiff pleads that it is a part of this market. Rather, they claim in conclusory fashion that OCLC is a monopolist in the sale of interlibrary lending services. (*Id*. ¶¶ 20-21.) The Complaint never explains how, as non-participants in this market,[2] either has suffered from any action of OCLC in that market.

---

[2] In reality, Innovative is a major player in the general ILL market. In paragraph 19 of the Complaint, Plaintiffs concede that "[Innovative's product] INN-Reach is a consortial borrowing system that directly links multiple library systems in a defined geographic area into a single real-time 'union' catalog (*i.e.*, a combined library catalog describing the collections of the libraries in the consortium) that provides resource sharing among libraries." Nevertheless, the Complaint does not assert that INN-Reach competes with OCLC in the narrow "academic library" ILL market. Obviously, to have pled that it participated in this market would have required Plaintiffs, rather than resting on the conclusory allegation that OCLC is the only player in the market, to plead the names of all of the participants and thus would have defeated any plausible claim that OCLC is a monopolist. Therefore, for purposes of this Motion to Dismiss, Plaintiffs are bound by their own attempts to jigger market definitions by failing to plead that they participate in these markets.

The third market claimed by Plaintiffs is the market for cataloging services for academic libraries.  In this market, the Complaint claims that SkyRiver, but not Innovative, is a "new entrant."  (Compl. ¶ 17.)  While conclusorily asserting that cataloging services for "academic libraries" (a term the Complaint never defines) are a separate product market, Plaintiffs do not plead facts explaining why cataloging services for academic libraries are different from cataloging services for public libraries (or any other sort of library).  Nor do they plead any facts explaining in any way how cataloging services actually work, how cataloging services to non-academic libraries are different, or why – apart from the superiority of WorldCat – OCLC has a strong market share in these services.

Finally, the Complaint references, without defining, a fourth market for ILS software, which OCLC is accused of attempting to monopolize.  Apart from pleading that Innovative competes in this market, the Complaint never bothers to identify the market's participants, their market shares, what barriers to entry exist, or the means by which OCLC or any other entity could exercise pricing power in this market.  (*Id.* ¶¶ 18-19.)

### 2.     The Purported Anticompetitive Conduct.

When turning to allegations of OCLC's anticompetitive conduct, the Complaint remains as vague and conclusory as it is in its description of the relevant markets.

#### a.   *"Anticompetitive" Actions in OCLC's Records Use Policy.*

Plaintiffs' first allegations of purported anticompetitive conduct (*id.* ¶¶ 32-37) arise from OCLC's "Principles of Cooperation" and "Guidelines for Contributions to WorldCat," documents which Plaintiffs have not attached to the Complaint, but did attach the current versions to their Opposition to OCLC's Motion to Transfer this case from the Northern District

of California.  (*See* Dock. # 21-1, Ex. B.)[3]  The nature of these documents is not pled:  it is not claimed that these documents are anything other than "guidelines" OCLC publishes or that OCLC has ever used these documents to prevent a library from providing its catalog records to Plaintiffs or any other entity.  Likewise, Plaintiffs do not claim that OCLC's policies prevent Plaintiffs from having access to other sources of records, for example, the Library of Congress, which makes its records readily available.  When actually describing OCLC's records use policy, Plaintiffs claim only that:

> OCLC's Principles and Guidelines not only require member libraries to contribute to OCLC all current bibliographic and holdings information which represents cataloged items or their collections, but in addition member libraries are required to: create bibliographic records and related data consistent with the "guidelines" adopted by OCLC; support and promote shared use of records among members; limit use of OCLC records, systems and services to OCLC authorized users; promote the responsible use of OCLC-derived records only by approved users; and ensure that the resources of the cooperative are used only to the benefit of the cooperative.

(Compl. ¶ 34.)  At other points in the Complaint, without addressing the text of the records use policy, Plaintiffs characterize the policy as placing broad restrictions on a library's use of its own records.  (*Id.* ¶¶ 34-36.)  However, these conclusory allegations are belied by the actual terms of the records use policy pled above, as well as by the text of the records use policy Plaintiffs have attached to their Opposition to the Motion to Transfer.[4]  For example, Plaintiffs claim that "a member library may not transfer or share records of its own holdings with commercial firms" (*id.* ¶ 35), but the records use policy states no such thing.  Throughout these allegations, moreover, Plaintiffs confuse and obscure the terms "OCLC records" and "library records."  In reality, the situation is simple:  OCLC does not prohibit a library from sharing its original cataloging records

---

[3] Attached hereto as Exhibit 1 for the convenience of the Court.

[4] When ruling on a Rule 12(b)(6) motion, courts may consider the complaint as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86-87 (6th Cir. 2007).  In a Rule 12(b)(6) dismissal, the court may take judicial notice of materials, "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

with whomever it pleases; it does, consistent with the fact that the WorldCat database is copyrighted, claim a legal right to the unique identifier information used to link and make usable records in WorldCat.

### b.   "Anticompetitive" Actions in Cataloging Services.

Plaintiffs' next set of allegations is that OCLC somehow acted anticompetitively in building the WorldCat bibliographic database and using that database in supplying cataloging services to academic libraries, because it would somehow be more pro-competitive to give for-profit companies – like Plaintiffs – access to these assets.  (*Id*. ¶¶ 38-40.)  Earlier, Plaintiffs concede that OCLC has built this database through years of work and investment:

> Since 1971, OCLC has used its nonprofit, tax-free status and stated charitable mission to induce libraries throughout the U.S. and many foreign countries to become members of a purported cooperative by contributing to a single database controlled by OCLC the bibliographic metadata (or records) describing their library holdings.  In its digital electronic form, this metadata consists of the information traditionally found in a library's card catalog.  OCLC has thus compiled a bibliographic database comprising the library holdings of more than 72,000 libraries in 171 countries.

(*Id*. ¶ 13.)  The only anticompetitve aspect the Complaint alleges regarding the creation of this database is the allegation that WorldCat was augmented by the 1999 acquisition of the Washington Library Network and the 2006 acquisition of Research Libraries Group, Inc.  (*Id*. ¶ 39.)  While the Complaint claims that these were the only two other bibliographic databases in existence, it does not plead any facts regarding the nature of these databases, how they augmented WorldCat, or why the libraries who created records in those databases are not perfectly free to share them with Plaintiffs.  Nor does the Complaint explain how, if the WorldCat bibliographic database is "essential" to delivery of cataloging services, SkyRiver could enter the market without access to it.

c.   *"Anticompetitive" Actions in ILL Services.*

Plaintiffs' next set of allegations essentially boil down to the claim that OCLC has not set favorable prices for libraries that use SkyRiver's cataloging services and want those records to be included in WorldCat for purposes of inter-library lending.[5]  (*Id.* ¶¶ 41-55.)  Plaintiffs essentially concede that if a library catalogs its records using SkyRiver's product, those records have not been registered into WorldCat (because that is not a service that SkyRiver can provide) and do not contain the metadata to link into WorldCat.  (*Id.* ¶¶ 42-43.)  They then claim that OCLC charges libraries more for registering holdings in WorldCat than it may have charged in the past, or that it charges a library that already has its cataloging subscription.  Nevertheless, Plaintiffs go on to plead that the libraries that have become SkyRiver's customers have not found this service "essential," since they have turned down OCLC's bids to provide that service.  (*Id.* ¶ 51.)

d.   *"Anticompetitive" Actions in OCLC's Entry into ILS Services.*

Plaintiffs' next group of allegations of purportedly anticompetitive conduct relate to OCLC's recent entry into ILS services – the market Plaintiffs neglect to define in their Complaint.[6]  (*Id.* ¶¶ 56-65.)  In these paragraphs, Plaintiffs concede that OCLC is a new entrant in the market and Innovative a well-established player.  (*Id.* ¶¶ 57-58; 61-64.)  They further plead that WorldCat – presumably because it contains the most complete list of catalog holdings

---

[5] As noted above, Plaintiffs do not claim that they compete in the ILL market they have defined.

[6] While, again, for purposes of this Motion to Dismiss, OCLC must accept the allegations in the Complaint as true, for the Court's benefit and clarification, WorldCat Local is actually not an ILS product (a substitute for circulation and acquisition software on the market) – WorldCat Local is one of a new generation of discovery interfaces.  These discovery interfaces provide an upgraded searching experience for library users compared to the standard searching interface (local catalog) provided with all ILS software.   OCLC's WorldCat Local, a number of  ILS companies' products, and other library services providers have created and are selling these services to libraries.  WorldCat Local is a product that  interoperates with the library's existing ILS and/or ILL systems, including Innovative's Millennium and INN-Reach products.

already – gives OCLC an advantage in entering into this new market.  (*Id.* ¶¶ 61-62.)[7]  Finally, they claim that OCLC has been successful in entering this market, at least through its WorldCat Local product, because it has gained 360 customers from Innovative since entering the market. (*Id.* ¶ 62.)  The Complaint fails to indicate what share of the overall market these gains represent or what share of the undefined ILS market OCLC has achieved.

> e.   *"Anticompetitive" Acquisitions by OCLC.*

Plaintiffs next offer a set of allegations regarding OCLC's conduct that consists of a list of acquisitions OCLC has made over the last twenty-eight years, with absolutely no information (except the conclusory allegations, discussed above, at ¶ 39 of the Complaint) as to the nature of these acquisitions, how they impact competition in any relevant market today, or how they plausibly harmed competition when they were made.  (*Id.* ¶¶ 66-72.)

> f.   *OCLC's Non-Profit Status as "Anticompetitive."*

Finally, Plaintiffs allege that OCLC has somehow anticompetitively used the fact that it is a non-profit entity.  (*Id.* ¶¶ 73-74.)  These allegations boil down to the assertion that OCLC has an advantage over Plaintiffs because it does not need to make a profit and that in some undefined way, in competing with SkyRiver, OCLC can charge lower prices than it would if it were a for-profit entity.  (*Id.* ¶ 74.)

## C.   The Purported Harm to Competition and Consumers.

Plaintiffs' allegations of how OCLC's alleged conduct has actually harmed competition are summarized as follows:  (a) library records should be free, regardless of OCLC's investment in aggregating, normalizing, enhancing, maintaing, and delivering services based on them (*id.* ¶

---

[7] Plaintiffs make entirely false allegations that one university did not follow its state procurement process in purchasing OCLC's product and that librarians have received trips for considering OCLC's product.  Apart from defaming the libraries in question under the cover of a judicial pleading, these allegations are entirely irrelevant to the claims in this case, and provide no grounds to support a claim that OCLC has gained, or has a dangerous probability of success in gaining, a monopoly in ILS services.

76); (b) some undefined number of librarians have been given incentives to recommend OCLC products (*id.* ¶ 77); and (3) because OCLC allegedly has charged more to libraries who do not have a cataloging subscription for registering their holdings in WorldCat on a "batch load" basis than those libraries that do have a subscription, those libraries have not saved as much money as they would like (*id.* ¶ 78).

## III.  THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY

### A.  To Avoid Dismissal, Plaintiffs Needed to Plead Facts Making a Claim Plausible, Not Merely Legal Conclusions.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the U.S. Supreme Court heightened the standard for surviving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Twombly* makes clear that because antitrust claims can be complex and expensive, a careful review of the sufficiency of the pleadings pursuant to Rule 12(b)(6) is essential.  *See Pac. Bell Tel. Co. v. Linkline Comm'ncs, Inc.*, 129 S.Ct. 1109, 1123 (2009) (stating that the Supreme Court "articulated" a "new pleading standard . . . in *Twombly*"); *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 731-32 (6th Cir. 2008); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (*en banc*).  Under this standard, a plaintiff's complaint must state facts "plausibly suggesting (not merely consistent with)" the elements of its cause of action.  *Twombly*, 550 U.S. at 557; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-52 (2009) (holding that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" that if accepted as true, "state a claim to relief that is plausible on its face," that is, a set of facts that permit the court to do more than "infer more than a mere possibility of misconduct," and instead allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Thus, in deciding a Rule 12(b)(6) motion, a court must "determine whether the complaint contains 'enough facts to state a claim to relief ***that***

*is plausible on its face*.'"  *Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569)) (emphasis added).

A court may freely reject legal conclusions, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949-50.  In fact, judges must use their "judicial experience and common sense" in determining plausibility.  *Iqbal*, 129 S. Ct. at 1950.  Accordingly, to survive a motion to dismiss, a plaintiff's complaint must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Rather, a plaintiff must present factual allegations that "raise a right to relief above the speculative level."  *Id*.  Without such factual allegations, a claimant cannot satisfy the requirement of providing "fair notice" of the nature of the claims or the "grounds" on which the claims rest.  *Id*. at 556 n.3.  *See also NicSand*, 507 F.3d at 451.

**B.**     **The Complaint Fails to Plead Facts Plausibly Showing that Plaintiffs Suffered Antitrust Injury or Have Antitrust Standing.**

Plaintiffs have failed to state a claim for relief under the antitrust laws because Plaintiffs have failed to plead facts sufficient to meet the threshold requirement of antitrust injury and standing to sue.  *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 484-89 (1977); *NicSand,* 507 F.3d at 450 ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law."); *HyPoint Tech., Inc. v. Hewlett-Packard Co.*, 949 F.2d 874, 877 (6th Cir. 1991).

**1.**     **The Complaint Fails to Plead Facts Plausibly Showing that Plaintiffs Suffered Antitrust Injury.**

General allegations of harm to competition are insufficient to survive a motion to dismiss:  "[Plaintiff's] complaint offers generalized allegations of antitrust injury, but the Supreme Court requires more than 'naked assertion[s]' to establish antitrust standing."  *CBC*

- 12 -

*Cos., Inc. v. Equifax,* 561 F.3d 569, 572 (6th Cir. 2009); *see also NicSand*, 507 F.3d at 451 (quoting *Bell Atl.,* 127 S. Ct. at 1966).   Unless an antitrust plaintiff alleges an injury that arises from "an anticompetitive aspect of the practice under scrutiny," the complaint will not survive Rule 12(b)(6) scrutiny.  *CBC Cos.,* 561 F.3d at 572.   Furthermore, a plaintiff alleging antitrust injury must allege injury to a relevant market, not just injury to the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 434 (6th Cir. 2008).   That is, an antitrust plaintiff must demonstrate that "the alleged *violation* tended to reduce competition overall" and that "the plaintiff's injury was a consequence of the resulting diminished competition."  *CBC Cos.*, 561 F.3d at 572 (quoting *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 485 F.3d 880, 887 (6th Cir. 2007)).   This heightened standard for pleading antitrust injury reflects the principle that antitrust laws exist to protect competition, not individual competitors.  *Brunswick Corp.*, 429 U.S. at 488 (citing *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 320 (1962)).

As now-Justice Breyer explained:  "Anticompetitive . . . has a special meaning:  it refers not to actions that merely injure individual competitors, but rather to actions that harm the competitive process . . . a process that aims to bring consumers the benefits of lower prices, better products, and more efficient production methods."  *Interface Group v. Mass. Port Auth.*, 816 F.2d 9, 10 (1st Cir. 1987) (citation omitted).  As the Sixth Circuit has held, "[a]t a minimum, this requirement means that one competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition.  '[I]t is inimical to [the antitrust] laws to award damages' for losses stemming from continued competition."  *NicSand*, 507 F.3d at 450 (internal citations omitted).  In deciding a Rule 12(b)(6) motion, a court must determine whether the complaint contains "enough facts to state a claim if the injury is not of the requisite type, even though the would-be plaintiff may have suffered an injury as a result of conduct that violated the antitrust

laws, he or she has no standing to bring a private action under the antitrust laws to recover for it." *Barton & Pittinos v. Smithkline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997).

None of Plaintiffs' allegations meet this test. First, the allegation that OCLC has a monopoly in any of the products alleged, or that WorldCat gives it a competitive advantage in any of these markets, is plainly insufficient to plead antitrust injury: "Simply possessing monopoly power and charging monopoly prices does not violate § 2 [of the Sherman Act]; rather, the statute targets 'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Pac. Bell Tel. Co.*, 129 S. Ct. at 1118 (quoting *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). The bare allegation that OCLC is a monopolist does not meet the requirement of pleading harm to competition. Rather, the allegations that OCLC's competitive advantage comes from the nearly forty years it has invested in developing WorldCat make it clear that OCLC's alleged market share arises from a superior product. (Compl. ¶¶ 13-14.)

Likewise, the tenuous claim that OCLC has limited for-profit entities from accessing its records does not plead facts sufficient to show harm to competition. Again, at most, the Complaint pleads only that libraries cannot share OCLC's records, not that they cannot share the records they themselves created. The actual policy, which Plaintiffs incorporate by reference, confirms this fact. (Compl. ¶ 33.) The Complaint does not allege any facts sufficient to suggest that OCLC's records are in any way necessary for competition, as opposed to simply giving OCLC a competitive advantage. Indeed, the fact that SkyRiver entered the market purportedly without these records, instead using, for example, readily available Library of Congress records, bars any inference that a lack of access to WorldCat records forecloses competition.

Likewise, none of the allegations regarding OCLC's competitive conduct in the cataloging, ILL, and ILS markets show any conduct rising to the level of antitrust injury.  Again, it defeats the fundamental purpose of the antitrust laws if OCLC cannot compete vigorously against Plaintiffs by using its superior assets.  Plaintiffs have not alleged that any of OCLC's prices were predatory, *i.e.*, below its marginal cost of additional sales.  Moreover, while Plaintiffs attempt to contort OCLC's pricing to Michigan State and California State – Long Beach into a tying claim, the Complaint itself admits that neither school was coerced into purchasing the registration of their catalog records into WorldCat from OCLC – both turned down OCLC's offer.  *See* § III.C.4, *infra* (discussing the requirements for a tying claim).  Thus, under *NicSand*, allegations do not rise to the level of pleading antitrust injury.  507 F.3d at 450.

Similarly, the fact that OCLC is a non-profit entity does not turn its competitive pricing into an antitrust injury.  Indeed, the only relevance of OCLC's non-profit status to this case is that if this Court reaches the merits of these antitrust claims, it must "fully investigate the procompetitive and noneconomic justifications proffered" by OCLC for the design of its products and the manner in which they are sold as they relate to OCLC's non-profit mission.  *U.S. v. Brown Univ.*, 5 F.3d 658, 678 (1st Cir. 1993).  In other words, OCLC's non-profit status expands its defenses to antitrust liability, rather than provides a basis for it.

Finally, with respect to the claim that OCLC's acquisitions of various other entities have been anticompetitive (Compl. ¶¶ 39, 67-68), apart from Plaintiffs' complete failure to plead even the markets that those entities competed in, and how each acquisition reduced competition, it has long been recognized that a competitor does not suffer antitrust injury as the result of two other competitors merging.  *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 116-17 (1986); *Axis,*

*S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989).  Accordingly, the Complaint should be dismissed in its entirety for failure to allege any cognizable antitrust injury to Plaintiffs.

### 2. Plaintiffs Lack Standing under the Antitrust Laws.

Moreover, apart from failing to plausibly plead antitrust injury, Plaintiffs have also failed to plead that they otherwise have antitrust standing.[8]  To establish antitrust standing, an antitrust claimant must plead both (1) "injury of the type that the antitrust laws were intended to prevent" and (2) injury "that flows from that which makes the defendants' acts unlawful."  *Brunswick Corp.,* 429 U.S. at 489; *see also Cargill, Inc.,* 479 U.S. at 110 n.5 (antitrust injury is a "necessary, but not always sufficient," condition of antitrust standing); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (the necessary "antitrust injury" is an injury attributable to the anticompetitive aspect of the practice under scrutiny).

The test for antitrust standing has been distilled into five elements:  "(1) the nature of the plaintiff's alleged injury; that is *whether it was the type the antitrust laws were intended to forestall*; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054–55 (9th Cir. 1999) (emphasis added).  These factors are generally balanced.  *See*, *e.g.*, *Caruana v. Gen. Motors Corp.*, 204 F. App'x 511, 515 (6th Cir. 2006) (citing *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000)).[9]  Here, the indirectness of any injury claimed by Plaintiffs, the speculative measure of

---

[8] Antitrust standing is narrower than constitutional standing.  "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action."  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983).

[9] If antitrust injury is lacking, none of the other factors can resurrect a claim.  *NicSand*, 507 F.3d at 451-452 (citing *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986)).  *See also N.W.S. Mich., Inc. v. Gen. Wine & Liquor Co., Inc.*, 58 F. App'x 127, 128 (6th Cir. 2003) (the showing of an injury to competition is "a necessary element of antitrust standing"); *Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.*, 128

the harm pled, the risk of duplicative recovery and the potential complexity in apportioning damages all weigh against finding that Plaintiffs have antitrust standing.

First, Plaintiffs cannot have suffered injury in the ILL market since they deny participating in that market.  (*See* Section II.B.1, *infra*.)  Moreover, even if Plaintiffs' claims are credited as true, they have suffered no harm from any of OCLC's actions directed to Michigan State or California State – Long Beach.  They already have made sales to those two libraries. (Compl. ¶¶ 43, 49.)  While OCLC denies that either of these libraries has suffered as the result of anything other than purchasing Plaintiffs' inferior cataloging software, it is the libraries that bear the consequences of that choice, and of having to separately register their holdings in WorldCat, not Plaintiffs.  Plaintiffs have not pointed to a single specific sale that they have not made as the result of any action of OCLC, and therefore they simply have not pled facts sufficient to meet their burden of showing that they have antitrust standing.  *See Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994); *SAS of P.R., Inc. v. P.R. Tel. Co.*, 48 F.3d 39, 44 (1st Cir. 1995) (a "*supplier* who suffers because an antitrust violation curtails a business that would otherwise have purchased from the supplier," does not "suffer[] 'antitrust injury'" because a foreclosed purchaser would be the "immediate victim and preferred [antitrust] plaintiff."); IIA Phillip Areeda & Herbert Hovenkamp et. al., ANTITRUST LAW ¶ 350a. (2007) (suppliers rarely have antitrust standing).

## C.       Each of Plaintiffs' Substantive Claims Fails as a Matter of Law.

### 1.       Plaintiffs' Monopolization Claim Fails as a Matter of Law.

In addition to failing because Plaintiffs did not plead that they suffered antitrust injury and have antirust standing, each of Plaintiffs' claims fails because Plaintiffs have not pled facts sufficient to support a plausible claim with respect to any of these causes of action.  Their

---

F.3d 398, 402 (6th Cir. 1997) (holding that "[*w*]*ithout antitrust injury, no private antitrust action will lie at law or in equity*") (emphasis added).

monopolization claim fails because Plaintiffs have not pled any action that could plausibly constitute the willful acquisition or maintenance of monopoly.

To establish that OCLC illegally monopolized a market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Plaintiffs must demonstrate "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *see also Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992); *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 622 (6th Cir. 1999).

The Supreme Court reaffirmed the need for caution in Section 2 cases, warning, "if every unilateral action that restrained trade were subject to antitrust scrutiny, then courts would be forced to judge almost every internal business decision."  *Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201, 2208-09 (2010).  Therefore, "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."  *Pac. Bell Tel. Co.*, 129 S. Ct. at 1118.  Plaintiffs' allegations must be carefully reviewed in the context of these concerns to avoid "chilling vigorous competition through ordinary business operations." *Am. Needle*, 130 S. Ct. at 2209.

Plaintiffs' allegation of conduct amounting to willful creation or maintenance of monopoly boil down to the following:

- OCLC is using monopoly in WorldCat database and ILL as leverage to force libraries to purchase cataloging services (Compl. ¶ 80);

- OCLC is maintaining cataloging monopoly by selective price increases and selective price cuts (*id.* at ¶ 80), excluding SkyRiver by raising price for record uploading, and by selectively cutting price as to its cataloging service (*id.* at ¶ 81); and

- OCLC is maintaining monopoly in bibliographic, ILL, and cataloging markets by (a) requiring exclusive dealing; (b) requiring members to assist in developing new products; (c) "aggressive" acquisitions; and (d) unreasonably denying bibliographic metadata in WorldCat and member libraries to SkyRiver (*id.* at ¶ 81).

Each of these allegations is insufficient to state a claim.

### a. "Forcing" Libraries to Purchase OCLC's Cataloging Services.

Plaintiffs' own pleadings confirm that OCLC has offered to sell WorldCat registration separately from its subscription, and therefore, it has not "leveraged" its monopoly power into another market.  (Compl. ¶¶ 45-46, 49.)  At most, Plaintiffs claim that OCLC's subscription service is a packaged discount over separate purchase of the services contained in that subscription.  Unless the packaged discount offered (here OCLC's subscription) is predatory (*i.e.*, priced below the marginal cost of the units sold), it cannot violate the antitrust laws.  *See Cascade Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008); *see also Doe v. Abbott Labs.*, 571 F.3d 930 (9th Cir. 2009).  As the *en banc* Sixth Circuit has explained:

> "[C]utting prices in order to increase business often is the very essence of competition"; and "mistaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect. We must be concerned lest a rule or precedent that authorizes a search for a particular type of undesirable pricing behavior end up by discouraging legitimate price competition."  "It would be ironic indeed if the standards" for establishing antitrust injury "were so low that antitrust suits themselves became a tool for keeping prices high."

*NicSand*, 507 F.3d at 452 (citations omitted).  Accordingly, a monopolization claim cannot rest on the fact that OCLC charges less for products sold as a subscription than when sold separately.

### b. OCLC's Pricing.

Much of Plaintiffs' Complaint rests on the assertion that when selling a subscription of registering holdings into WorldCat, OCLC had a duty to charge libraries prices that were low enough to permit Plaintiffs to compete more effectively against OCLC.  Federal antitrust law, however, does not provide a negotiating tool for a plaintiff seeking better contract terms, even

when purportedly dealing with a monopolist.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, L.L.P.*, 540 U.S. 398, 408 (2004); *CBC Cos., Inc.*, 561 F.3d at 573.  *See also Pac. Bell Tel.,* 129 S. Ct. at 1118 (indeed, "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing").  To the contrary, "[t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system."  *Trinko*, 540 U.S. at 407.  *See also Pac. Bell Tel.*, 129 S. Ct. at 1121 ("Courts are ill suited 'to act as central planners, identifying the proper price, quantity, and other terms of dealing.'") (citations omitted).

<em>c.      "Exclusive" Dealing.</em>

Plaintiffs also have failed to plead unlawful exclusive dealing by OCLC because they failed to set forth facts showing how OCLC engaged in any exclusive dealing arrangement that harmed competition.  "[A] legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient.  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  In order to plead that exclusive dealing provisions – here, the allegation that libraries are limited in the records they can share with Plaintiffs – the Complaint must set forth facts sufficient to show that the records use policy foreclosed entry into the cataloging market.  *See, e.g., NicSand*, 507 F.3d at 454-55.  The mere fact that SkyRiver has entered the cataloging market with some source of bibliographic records (likely readily available Library of Congress records), is more than sufficient basis to reject the unsupported claim that OCLC's records use policy limits competition, or is anything other than a legitimate reminder of OCLC's copyright in WorldCat as derivative work.  Further, as noted above and confirmed by the records use policy

- 20 -

that Plaintiffs themselves have placed before the Court (Ex. 1), Plaintiffs pled, at most, only that libraries cannot share OCLC records, not that they are prevented from sharing records they created. Therefore, the records use policy does not support Plaintiffs' monopolization claim.

<em>d.   "Forcing" Libraries to Assist in the Development of New Products.</em>

"A monopolist, no less than any other competitor, is permitted and indeed encouraged to compete aggressively on the merits, and any success it may achieve solely through 'the process of invention and innovation' is necessarily tolerated by the antitrust laws." *Berkey Photo, Inc. v. Eastman Kodak Co*., 603 F.2d 263, 281 (2d Cir. 1979) (citation omitted). Accordingly, "[a]s a general rule, courts are properly very skeptical about claims that competition has been harmed by a dominant firm's product design changes." *U.S. v. Microsoft Corp.,* 253 F.3d 34, 65 (D.C. Cir. 2001); *see also U.S. v. Microsoft Corp.*, 147 F.3d 935, 948 (D.C. Cir. 1998) ("any dampening of technical innovation would be at cross-purposes with antitrust law"). Here, Plaintiffs did not allege what new products have been developed by cooperation with libraries, let alone that any product developed with the assistance of libraries contributed to any monopoly, that such products improperly excluded the Plaintiffs from any market, that such products were not beneficial to library customers, or that Plaintiffs were in any way precluded from themselves partnering with libraries to develop a new product.

<em>e.      OCLC Acquisitions.</em>

Plaintiffs have failed to plead sufficient facts upon which the Court could conclude that any acquisition OCLC made was anticompetitive. Many courts have recognized the *Twombly* requirements in the merger and acquisition context, and have held that factual allegations must make plausible the claim that the merger violated the antitrust laws. *See Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010); *Malaney v. UAL Corp*., No. 3:10-CV-02858-RS, 2010

- 21 -

U.S. Dist. LEXIS 106049 (N.D. Cal. Sept. 27, 2010).   Here, the Complaint contains only conclusory allegations that anticompetitive acquisitions were made but contains no facts sufficient to meet the *Twombly* standard in showing:  (a) the relevant competitive overlap; (b) the specific competitive impact; and (c) any connection to claimed monopolistic conduct.  As such, Plaintiffs' boilerplate reference to past acquisitions cannot salvage their monopolization claim.

*f.   Denying SkyRiver Access to the WorldCat Database.*

The Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Christy Sports, LLC v. Deer Valley Resort Co*., 555 F.3d 1188, 1194 (10th Cir. 2009) (quoting *Trinko*, 540 U.S. at 408); *see also Pac. Bell Tel.,* 129 S. Ct. at 1118.  As the Supreme Court has recognized, "[c]ompelling such firms to share the source of their advantage is in some tension with the underlying purpose of antitrust law, since it may lessen the incentive for the monopolist, the rival, or both to invest in those economically beneficial facilities." *Trinko*, 540 U.S. at 407-08.  Accordingly, the Supreme Court has only found a duty to deal under one extremely limited circumstance:  where a monopolist terminates a pre-existing profitable relationship with a competitor without a lawful business purpose if that termination has an anticompetitive effect. *See id*. at 409 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)).  Plaintiffs do not allege any prior course of dealing between themselves and OCLC.  Therefore, OCLC has no duty to deal.

Nor can Plaintiffs salvage this claim by asserting (contrary to the assertion that WorldCat is somehow a separate "bibliographical market") that WorldCat is an "essential facility."  The Supreme Court has expressed skepticism as to whether the "essential facilities doctrine" even exists. *See Trinko*, 540 U.S. at 410-11 (noting that the Court has "never recognized such a

doctrine" and "[t]o the extent respondent's 'essential facilities' argument is distinct from its general § 2 argument, we reject it"); IIIB Phillip Areeda & Herbert Hovenkamp, ANTITRUST LAW ¶ 772, at 199 (3d ed. 2008) ("'[E]ssential facility' is just an epithet describing the monopolist's situation:  the monopolist possesses something the plaintiff wants. It is not an independent tool of analysis; it is only a label . . . ").  Moreover, the "essential facilities" doctrine has never been extended to require that a holder of intellectual property rights or intangible assets share those rights with a competitor.  *See Novell, Inc. v. Microsoft Corp.*, 699 F. Supp. 2d 730, 747 (D. Md. 2010).[10]  Finally, Plaintiffs' essential facilities claim fails because they do not allege that they ever offered to purchase access to WorldCat on reasonable terms – to the contrary, their allegation is that they are entitled to access to WorldCat for free.  (Compl. ¶ 76.)

For each of these reasons, Plaintiffs' First Claim fails as a matter of law.

**2.      Plaintiffs' Claim of Attempted Monopolization Fails as a Matter of Law.**

Plaintiffs' Second Count claims that OCLC has engaged in attempted monopolization in using alleged monopoly power in existing markets to leverage monopoly in the ILS market in which OCLC is a new entrant (Compl. ¶ 89), and (largely reiterating the claims of Count 1) that OCLC has used WorldCat and other alleged arrangements with libraries to monopolize other markets (*id*. ¶ 90).  Ultimately, these claims seem to boil down to the assertion that denying Plaintiffs free and unlimited access to WorldCat is attempted monopolization.

---

[10]  *See also Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1357-58 (Fed. Cir. 1999), *aff'd*, 253 F.3d 695 (Fed. Cir 2001) ("The notion that the withholding of technical information and samples of pre-release chips violates the Sherman Act, based on essential facility jurisprudence, is an unwarranted extension of precedent and cannot be supported on the premises presented.") (reversing the district court's holding that Intergraph's dependency on Intel's superior microprocessor product converted Intel's special customer benefits into an "essential facility"); *Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475, 490 (D. Md. 2008) ("[E]ssential facility claims involving tangible assets are quite different from claims involving technical innovation, and plaintiff fails to provide a compelling argument for applying the doctrine to technological innovations or information."); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 743, 745-46 (D. Md. 2003) (noting that "to require one company to provide its intellectual property to a competitor would significantly chill innovation" and "the essential facility doctrine has never been interpreted to deny a person the right to gain temporary benefits from innovations to its own products").

In order to state a claim for attempted monopolization, a plaintiff must plead facts making probable (1) anticompetitive or predatory conduct, (2) a specific intent to act in an anti-competitive manner, and (3) dangerous probability of success.  *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993); *Smith Wholesale Co. v. Philip Morris USA, Inc*., 219 F. App'x 398 (6th Cir. 2007); *Tarrant Serv. Agency v. Am. Standard*, 12 F.3d 609, 615-16 (6th Cir. 1993).

> ### a. *Plaintiffs Have Failed to Plausibly Allege Attempted Monopolization of the ILS Market.*

Plaintiffs' factual allegations regarding the ILS market, and OCLC's entry therein, are set forth in paragraph 18 of the Complaint:

> In 2008 OCLC introduced a new product called WorldCat Local to replace locally installed online library catalogs.  In 2009 OCLC introduced WorldCat Local "quick start," which it describes as "the first step toward web-scale cooperative library management services." These new products are designed and intended to establish an integrated library system, which typically includes all of the "backroom" functions of a library, including managing new library acquisitions, local administration of cataloging, circulation, delivery of library inventory and resource sharing among groups of libraries. This type of computer system for libraries is commonly referred to as an integrated library system or "ILS."  In 2009, OCLC also introduced WorldCat Navigator to provide resource sharing among groups of libraries.  OCLC is rapidly gaining market share in the ILS market by leveraging its monopoly power over its bibliographic database, cataloging and ILL and other anticompetitive conduct to disadvantage and eliminate its competitors.

This aspect of Plaintiffs' Second Claim fails because Plaintiffs have failed to plead any fact sufficient to make plausible any of the three elements of an attempted monopolization claim in OCLC's entry into the ILS market.

First, as noted above, the Complaint never attempts to plead the parameters of a relevant market for ILS services.  *See Worldwide Basketball & Sport Tours, Inc. v. NCAA,* 388 F.3d 955, 962 (6th Cir. 2004) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim").  Although market definition is a fact-based inquiry, an "insufficiently pled or totally unsupportable proposed market" will necessitate a dismissal.  *See Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 524 F.3d 726, 733 (6th Cir. 2008); *Total*

*Benefits Planning Agency, Inc v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008).  For this reason alone, this part of Count 2 should be dismissed.

Further, the Complaint does not plead any facts showing that, in seeking to enter the ILS market, OCLC has engaged in any anticompetitive or predatory conduct.  All the Complaint pleads is conclusory, and factually unsupported, assertions that "OCLC is rapidly gaining market share in the ILS market by leveraging its monopoly power over its bibliographic database, cataloging and ILL and other anticompetitive conduct to disadvantage and eliminate its competitors."  (Compl. ¶ 18.)

Moreover, the Complaint fails to plead any plausible facts to support the assertion that OCLC has a dangerous probability of success in monopolizing the ILS market.  In *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818 (6th Cir. 1982), the Sixth Circuit discussed the relationship between market share and dangerous probability of success:  "The greater a firm's market power the greater the probability of successful monopolization.  In order to be found liable for attempted monopolization, a firm must possess market strength that approaches monopoly power – the ability to control prices and exclude competition.  Market strength is often indicated by market share."  691 F.2d at 826.  Elsewhere, the Sixth Circuit has explained "that it would be rare indeed to find that a firm with only 25 percent or 50 percent of the market could control price over any significant period."  *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1432 (6th Cir. 1990).  Here, the Complaint simply alleges that OCLC has gained 360 customers, with no attempt to plead this number as a percentage of the ILS market.  (Compl. ¶ 62.)  Given the vast numbers of libraries in this country, these allegations fall well short of pleading a dangerous probability of success.[11]

---

[11] According to the American Library Association's website, there are 122,101 libraries in the United States.  *See* http://www.ala.org/ala/professionalresources/libfactsheets/alalibraryfactsheet01.cfm.

Finally, the Complaint pleads no facts supporting any inference that OCLC has the specific intent to monopolize the ILS market by the new product it is introducing.  *Tarrant Serv. Agency*, 12 F.3d at 615-16.

> b. *Plaintiffs Fail to Plausibly Allege Attempted Monopolization of Any Other Market.*

The other prong of Plaintiffs' attempted monopolization claim is essentially a restatement of its monopolization claims in Count 1, couched as "attempt" claims.  Reframing these claims, however, cannot save them.  As with Count 1, Plaintiffs failed to plead facts plausibly showing anticompetitive or predatory conduct.  *Tarrant Serv. Agency*, 12 F.3d at 615-16.  Likewise, an attempted monopolization claim must plead a specific intent to monopolize to survive a motion to dismiss.  *Id.*  As described above, the factual allegations at most demonstrate an intent to compete vigorously.  Those facts fall well short of pleading an attempted monopolization claim.

### 3.    Plaintiffs' Claim of Unlawful Exclusionary Agreements Fails.

Plaintiffs' Third Claim asserts that OCLC violated Section 1 of the Sherman Act by purportedly entering into unidentified exclusive dealing arrangements.  (Compl. ¶ 98.)  Plaintiffs claim that these agreements create an unlawful restraint of trade by:  (a) excluding or causing a refusal to deal with plaintiffs by denying them access to the WorldCat database for commercial use; (b) excluding plaintiffs from having access to the bibliographic data of its member libraries' holdings for commercial use; (c) requiring its members to deal exclusively or predominately with OCLC for library services and products; (d) requiring members to assist OCLC in developing products and excluding for-profit firms from similar access; (e) offering products free to eliminate plaintiffs as competitors; and (f) bundling or tying products or services with its monopoly products and services.  (*Id.*)  In short, the third count seeks to shoehorn Plaintiffs'

unsuccessful monopolization claims into a claim under Section 1 of the Sherman Act.  This attempt fails for several reasons.

First, none of OCLC's unilateral actions, or even the preconditions it places on dealing with libraries, constitute an agreement within the meaning of Section 1.  Thus, its refusal to deal with Plaintiffs, its offering products for free, and its packaging of products are not "agreements" actionable under Section 1.  *See Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984); *U.S. v. Colgate & Co.*, 250 U.S. 300 (1919); *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1354-55 (Fed. Cir. 1999).

Second, notwithstanding *Twombly*'s requirements, the Complaint does not even allege the rudimentary time, place, or participant elements of an illegal agreement under Section 1.  *See Twombly*, 550 U.S. at 565 n.10 (holding that to plead an antitrust conspiracy the complaint must mention "specific time, place, [and] persons involved in the alleged conspiracies").  *See also Total Benefits Planning Agency, Inc.*, 552 F.3d at 436 (affirming dismissal of a complaint of an illegal group boycott and "blacklist" for failure to plead sufficiently specific facts).  Plaintiffs' allegations of exclusive contracts are entirely conclusory – they do not point to a single actual agreement precluding a library from doing business with them.

Finally, absent specific allegations of harm to competition in a specific market, vertical agreements between a supplier such as OCLC and its libraries do not violate Section 1 of the Sherman Act.  *See, e.g., Smith v. N. Mich. Hosps.*, 703 F.2d 942, 953 (6th Cir. 1983) (recognizing that vertical restraints are likely procompetitive, and requiring a showing of actual anticompetitive effects).  No specific facts pointing to any actual harm to competition is pled in Count 4, and thus it fails.

For each of these reasons, Plaintiffs' Third Claim should be dismissed.

### 4. Plaintiffs' Claim of Illegal Tying Fails as a Matter of Law.

Plaintiffs' Fourth Claim asserts a claim for illegal tying. Plaintiffs' core allegation related to purported illegal tying states:

> [t]o coerce libraries to use OCLC's cataloging service and not to use SkyRiver's cataloging service, OCLC unreasonably increased the price of full participation in its ILL service and/or uploading charges for libraries using SkyRiver's cataloging service to contribute new acquisitions to the WorldCat database. The prices charged by OCLC to upload records by libraries that did not agree to use OCLC's cataloging service are punitive and are intended to exclude SkyRiver as a competitor for cataloging services.

(Compl. ¶ 107.) However, under Sixth Circuit precedent, a tying arrangement is defined "as an agreement by a party to sell one product . . . only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Mich. Div.-Monument Builders,* 524 F.3d at 731-32 (citations omitted). Under this definition, Plaintiffs' tying allegations fail to state a tying claim for at least two reasons.

First, there is no allegation OCLC has refused to separately sell uploading services; Plaintiffs allege only that OCLC charged too much for registering holdings into WorldCat. (Compl. ¶ 107.) Nothing in the antitrust laws requires OCLC to subsidize SkyRiver's inferior product by setting its pricing for registering holdings into WorldCat as low as possible. Under the Sixth Circuit's standard, a lower price of packaged products can create unlawful tying only if the alternative is so unfavorable that "all rational buyers" purchased the package, so that purchases outside the package would be "prohibitive." *Virtual Maint., Inc. v. Prime Computer, Inc.*, 957 F.2d 1318, 1322-23 (6th Cir. 1992), *vacated on other grounds*, 506 U.S. 910 (1992), *reaffirmed & reinstated in substantive part*, 11 F.3d 660, 667 (6th Cir. 1993); *see also Marts v. Xerox, Inc.*, 77 F.3d 1109, 1113 (8th Cir. 1996) (stating that products were not tied unless the package was the "only viable economic option" and separate purchases were "prohibitively expensive"). Plaintiffs have pled no facts that support such a claim.

Second, Michigan State and California State – Long Beach actually declined to purchase the registry of their records into WorldCat from OCLC.  By definition, someone who did not make a purchase could not have been coerced into making a purchase.  Plaintiffs' Fourth Claim fails as a matter of law.

### 5. Plaintiffs' Claims under California Business & Professional Code § 16720 and 16726 Fail as a Matter of Law.

Plaintiffs' Fifth Claim for Relief asserts a violation of California Business & Professional Code §§ 16720 and 16726 and also must be dismissed.  First, any attempt to plead Plaintiffs' monopolization and attempted monopolization claims under these statutes fails because the California antitrust statutes do not apply to OCLC's unilateral conduct.  *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1474 (9th Cir. 1986); *State ex rel. Van de Camp v. Texaco Inc*., 762 P.2d 385, 395 n.17 (Cal. 1988).  Likewise, Plaintiffs' attempt to plead claims of exclusive dealing and tying under California law fail because California applies federal law to determine the scope of its antitrust laws.  *See, e.g., Suburban Mobile Homes v. AMFAC Cmtys, Inc.*, 101 Cal. App. 3d 532, 542 (Cal. Ct. App. 1980) (tying).  Therefore, Plaintiffs' Fifth Claim must be dismissed.

### 6. Plaintiffs' claim under California Business & Professional Code § 17200 Fails as a Matter of Law.

Plaintiffs' Sixth Claim for Relief seeks to repackage their first five claims as a claim under Section 17200 of the California Business & Professions Code.  (Compl. ¶ 129.)  Section 17200, or California's Unfair Competition Law ("UCL"), provides equitable remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus & Prof. Code § 17200.  Specifically, § 17200 of the UCL imposes liability for five wrongs:  (1) unlawful business practices; (2) unfair business practices; (3) fraudulent business practices; (4) deceptive advertising; and (5) business practices prohibited in other specifically-

enumerated sections of the UCL.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179-80 (1999).  To state a claim under § 17200, the plaintiff must plead both (1) that the defendant has engaged in conduct "that can properly be called a business practice," and (2) which is illegal, unfair, or fraudulent.  *Id.* at 180.  Thus, § 17200 "borrows violations of other laws and treats them as unlawful practices."  *Id.* at 180; *see also Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003).  Failure to properly plead predicate claims will result in dismissal of the § 17200 derivative cause of action.  *See, e.g., Pittman v. Barclays Capital Real Estate, Inc.*, 2009 U.S. Dist. LEXIS 34885, at *10 (S.D. Cal. April 24, 2009).

Here Plaintiffs allege that "defendant has violated" the Sherman Act, the Clayton Act, and the Cartwright Act, "by the unlawful conduct described hereinabove."  (Compl. ¶ 129.)  As OCLC has demonstrated, each of these claims should be dismissed.  Plaintiffs' UCL claim is predicated on their other failed claims, therefore the derivative claim cannot survive and must be dismissed.  *See, e.g., Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181-82 (9th Cir. 2003); *Chavez v. Whirlpool Corp.,* 93 Cal. App. 4th 363, 375 (2001).  Plaintiffs' Sixth Claim fails as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Respectfully Submitted,

/s/ James A. Wilson
James A. Wilson (0030704)
Trial Attorney
**Vorys, Sater, Seymour and Pease LLP**
52 East Gay Street, P.O. Box 1008
Columbus, Ohio  43216-1008
T:  (614) 464-5606   F: (614) 719-5039
E-mail:jawilson@vorys.com
*Counsel for Defendant OCLC Online Computer Library Center, Inc.*

Of counsel:
Douglas R. Matthews (0039431)
Martha C. Brewer (0083788)
**Vorys, Sater, Seymour and Pease LLP**
52 East Gay Street, P.O. Box 1008
Columbus, Ohio  43216-1008
T: (614) 464-6400   F:(614) 464-6350
E-mail:        drmatthews@vorys.com
               mcbrewer@vorys.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned being counsel for Defendant. certifies that a true copy of the foregoing Joint Motion was served, this 13th day of December, 2010 via either the Court's CM/ECF system in accord with Fed. R. Civ. P. 5(b)(2)(E) or by Regular U.S. mail, upon all counsel of record.

<u>/s/ James A. Wilson</u>
James A. Wilson